Debtor, Kathy Ellen Richards Appellant, versus Mark R. Little, Trustee Apolli, Oral Argument Not to Exceed 15 Minutes per Side. Mr. Wilkie for the Appellant, you may proceed. Thank you. Good morning members of the panel and may it please the Court,  and Mr. Wilkie for the Appellant. The Appellant is here on an issue we think is controlled by a case of Erie Railroad versus Tompkins as to whether or not there is federal common law and what circumstances under which it might be appropriate to apply federal common law. Now when I was in law school, in constitutional law, we first heard of the case of Erie Railroad versus Tompkins and one of my classmates was so taken with that case that he had t-shirts made up for us that had a little green train on it with Erie Railroad versus Tompkins, no federal common law. It's an old case, but it stands for the proposition that unless there is a distinct federal interest, like in Admiralty or in cases where two states are the parties, then there is no federal common law. If you look at the cases that I have cited in my brief and the cases that Appellee has cited in the case, there are a number of cases around the country that have dealt with this issue in one part or another. I don't think anyone has come out and framed the issue in the way that I think we have. Is it appropriate for the bankruptcy code in trying to determine what is the nature of your interest in it? I understand Erie Railroad versus Tompkins. I understand your argument to look to the state laws by the rule of decision, essentially, on the meaning of residence, I think is the gist of your argument. I'm somewhat troubled or having a hard time understanding how it is that doing this isn't blending the state and federal, or the D-1 and the federal bankruptcy exemptions and the non-bankruptcy exemptions. How is it that we're not blending it? You're taking the best of Kentucky and then grafting it onto the D-1 uses as a residence. How is that not the case? Well, I think that's an excellent question. I think that it's recognized that there are certain areas that the federal statute can define what an exemption will embrace. For example, the provision in 522 that says that even if you had a waiver of exemption or if you had a debt that preexisted, this exemption won't be effective as against your claim of exemption. I think we can set those boundaries. You can do what the feds did when they said, okay, look, in 2005, we're going to change what domicile or what law of what state you can claim when claiming a homestead exemption. I think that's fair. But that still doesn't get down to how we define what it is that you have there. And the Supreme Court has said, well, in the case of we're trying to determine whether or not this has been a preference. Well, we're going to look at state law to determine what the rights of the creditors are. We don't have any problem with that. Here, we're saying, look, the people of the state of Kentucky for 200 years have looked at this issue and the people of the state of Kentucky through its legislature and its courts have defined what it is that your homestead exemption is. And if you look through the digest, the cases go on for pages as to what it is a residence is. And so we're saying that there is an interest within that state to define what that property interest is. And so we come to 522 and try to say, okay, what is your aggregate interest in property use as a residence? We're not going to define it. We're going to leave that to the state. I think Judge Merrill did an excellent job of trying to – I'm going to construe these statutes using the eustum degenerates argument of like, well, this is a similar statute. This one has proceeds. This one does not. Therefore, I'm going to conclude that the Congress did not intend for you to – this exemption to extend the proceeds. Well, okay, and that's a legitimate argument. I'm saying the premise is faulty. You should have said, okay, there's no definition of residence. What does that tell me? It tells me that the Supreme Court has said over and over again that property interests are defined by state law and we're going to leave that determination to state law. So when you come to that, you're going to say, look, okay, even though the people of Kentucky adopted the federal exemption scheme in 2005, we're going to say, what business does a bankruptcy judge have of telling the state of Kentucky what is the nature of that property that they want to – Well, I mean, we've got a situation here. I mean, you're making an argument, Buttner versus United States, okay, that the property interests are defined by state law, but we have the supremacy clause on the other side in the Constitution. So the question is, one, whether Congress intended – that's your argument is that Congress perhaps didn't intend to have the word residence mean something that was divorced from state law. But they certainly have the power to do that, don't they? I mean, it's not – and it's a question of whether Congress did it or didn't do it rather than whether this individual bankruptcy judge did or didn't in his decision. Well, I think if you read – that's a really good point. It was the kind of question I was hoping we could talk about today because I think there are some constitutional parameters to this in terms of separation of powers. We have the Article I, which says, okay, the legislature is going to make the laws. Article III, you're going to interpret them. Oh, and by the way, we have the states – we have federalism, and your states are going to have a right to make certain laws. So we are talking about what are the constitutional limits of the bankruptcy court's powers here. Is that to extend to, in essence, make law for the state of Kentucky? Can the bankruptcy court say, this is what – I'm not elected by the people of Kentucky, but can I make law for the people of Kentucky? Because Congress hasn't spoken here. They've not defined that. And so a lot of these cases are proceeding as if, okay, I, the bankruptcy court, am going to make the law here. And we're saying that's not what you can do under Rodriguez and under Urey. There's no federal common law. Buttner says – and there are a number of cases after that – say, look, these property interests are going to be defined by the state. These laws were passed, and that was – we have to assume the legislature knew about the pronouncements of the United States Supreme Court on we're going to reserve the definition of property interests to the state. And yet they – and so they crafted that statute with that in mind. Judge? I wanted to switch gears a little bit to have you perhaps anticipate the trustee's argument on mootness. And the question is, how is it that – is it the case that your client is claiming the D1 exemptions at the same time she's claiming the D5 exemptions? In other words, your client amended – after the adverse decision, your client amended Schedule C. And then shortly after amending, your client appealed from the decision – the adverse decision on D1, in essence claiming to this court or this panel that your client should be entitled to the homestead, all the while also claiming the spillover, as I understand it. Is that an accurate understanding? It is. How is that permissible? I'm practicing law. I've got a client who's just been told to turn over $25,000. And I'm thinking, well, I can do that, or I can just go ahead and take half the loaf now, turn over the rest of it to the trustee. And I think under 109, in the cases we cited there, that I can – if I win this and say, yes, you could have got all 25, I can come back and under 109 say, hey, I want to claim that exemption. So I think I can do it at any time. But you're doing it simultaneously, aren't you? Well, I don't think that there's any succession or any order in which I have to do it. I think that you'd have to acknowledge that in the event that we're successful and you said, okay, Wilkie, you were right, you should have gotten that $25,000 so I can come back and claim it. But could you have pursued that argument without amending? In other words, were there consequences to you from amending? Right. I could have. And your client has amended and I guess as the proceeds or partial proceeds from your trust account, has that been distributed to your client? Well, here's what we could have done. I could have said – But the question was, what happened to those proceeds that were in your trust account? Well, part of them my client kept and the balance I turned over to the trustee. So they're out of your trust account now? They're not in my trust account. I had an order that I no longer had an exemption unless I wanted to file a supersedious bond, which I couldn't do. I've got to turn that money over. There's an order saying that my exemption was disallowed. I had no – And what I could have done was said, okay, let's don't do this, let's wait. Let's wait and turn over all the money. And if I'd won, I'd gone to Mr. Little and said, okay, I'd like to have the bankruptcy appellate panel as my favorites to submit my money and that would have been okay. I ran the risk of if the trustee says, well, I feel pretty good about this, I want to distribute the funds. I don't have to wait for this appeal because I can just go ahead and hand out the money. I don't think I needed – I don't know how likely that was, but I didn't want to run that risk. Let's go back to – two things bother me here as far as – I mean, Kentucky set their exemption at $5,000, is that correct, as far as the state law?  Sure. Okay. So, I mean, you're arguing that essentially some Kentucky policy here, you know, they've expressed their policy as being, you know, you're limited to $5,000, but at the same time you're arguing that their proceeds exemption supports a much higher exemption under federal law. How do you reconcile those two things? Well, I just – in terms of the nature of what it is, is can I exempt this particular property? And the amount has been set by the federal government, okay, you take this, it's a $25,000. And so, but can you exempt the proceeds? And we said, well, what does state law say? Yes, you can exempt the proceeds no matter what the amount. It doesn't – I'm trying – when I was writing this, I was trying hard to understand what's the federal interest in denying an exemption of proceeds? Had we waited and instead of closing on the five days before, we waited to one day after, we don't have a problem. Well, what interest is served by that distinction? She sells, she files, she's got a house that she's going to sell and take the money and do whatever she wants to as opposed to just taking the money. What interest are we serving there? And I can't see what the federal interest is. Well, the federal interest is we want to make sure it's just a residence, an actual building and not just the money. When the states already worked through that and said, well, look, we're trying to protect this homestead and we do that by protecting the building and the money you get from it. And so the state is saying, here is how we're going to define what their property interest is. The feds have set the amount of it at $25,000, but in terms of what that is, well, that's up to the state. I see my time is up. Thank you very much for your attention. Good morning, Your Honor. As I stand before you all, I would submit to the court that there is no issue for this court to determine. I would advocate that based on the amendment filed by the debtor the day after Judge Merrill rendered his decision, she effectively removed the issue of whether there is any homestead exemption to the proceeds from the sale of her house. She amended her petition to claim under 11 U.S.C. section 522 D-5 a wild card exemption in the amount of $10,698. In so doing, she deleted or removed from this case any issue regarding the exemption of the proceeds from the sale of the house, the sale of the house having occurred five days before. As of 930 this morning, she has not yet changed her exemption back to homestead exemption. It's my position that had the debtor wanted to preserve her issue on appeal before this court, she would have had to maintain her homestead exemption. By so amending her petition, she's received... Your position is that the debtor, even though she's entitled clearly to, let's call it $10,000, and she needs that for insulin that she has to hold out in order to preserve this issue? She can't get money that she desperately needs in order to preserve this? Your Honor, from the sale of her house she did receive some of the proceeds and she used that to pay certain expenses that she had prior to her filing a petition. And Mr. Wilkie has listed that in his brief. So she was able to use some of that money for her own personal needs and when she had paid those expenses, one was for groceries, I think a veterinarian expense, then she filed her Chapter 7 petition. She has received over $10,000 already. Within 30 days after filing her amendment to a D-5 exemption, we paid out her wild card exemption. So she's had that money to live on and to use. All right, so let's take another example here. You're familiar with the case of Bullard that said that Chapter 13, denial of Chapter 13 confirmation is not a final appealable order. And so one of the ways that Bullard sets up, and it doesn't necessarily endorse it, but discusses it as a possibility in other cases such as Zahn and other cases have found it to be appropriate, is the only way you can go and appeal denial of a Chapter 13 case is to go propose your case, have it confirmation denied, propose a second case that conforms to what the bankruptcy court wants, and object to your own plan and have that plan confirmed and then appeal. It's the only way you can keep the automatic stay in place and still appeal. So are you saying that those cases are wrong, cases like Zahn, that allow that because you have a confirmed Chapter 13 plan? You've abandoned your prior plan, and even though you've objected to your own plan, is that moot under your theory? Why is this moot if that's not moot? Because this doesn't apply to what happened in this particular case. Certainly the debtor had the option of filing a Chapter 13 in which he could. This is more of a question of mootness. It's not whether the debtor here could have filed a Chapter 13. It's a question of whether the idea that a Chapter 13 plan that's denied and then confirmed over the objection of the debtor, that's the only way you can appeal a Chapter 13 plan, and courts have allowed that and said that is not moot. So why is this moot if that's not moot? What's the distinction? What's the principal distinction between the two? Because the debtor removed her exemption under the Homestead. All right, so you removed the prior Chapter 13 case where you proposed it and it was denied by the court. You've superseded it with a plan that pays $400 more a month. Why is that not moot? Why is this different? Again, because of the parameter of a Chapter 13 and the reorganization of debtor's debt, where in this case the debtor's actually trying to discharge her debts, that's the distinction I see, Your Honor. Counsel, you indicated that you paid out the exemption. Yes, sir. Were you involved in Mr. Wilkie's decision to disperse from the trust account to the debtor? What did you mean when you said you paid out the exemption? When she paid, when she filed her amendment and claimed a D-5 exemption, we waited 30 days to ensure there's no objection to that amended exemption. Then Mr. Wilkie withheld the Wildcard amended exemption, dispersed that to Ms. Richards and sent me the rest, which I still have in my trust account. Was that with your agreement that the money was dispersed part to you and part to the debtor? There was no objection to the exemption and the Wildcard, so I felt there was nothing wrong in rather than Mr. Wilkie sending me the entire amount and I send her a check, let him disperse the Wildcard amount. He checked with me and asked my permission. I said, certainly, and he did that, gave that to Ms. Richards and sent me the rest. In the interim, she had appealed? Sir? In the interim, she had appealed? Yes, sir. But I had no objection to a Wildcard exemption. It was properly taken and she was entitled to that Wildcard exemption. I did object, obviously, to the exemption on the proceeds of the homestead. You started by telling us that as of 930, she had not amended to claim D-1. Yes, ma'am. Had she done so, would that remove your argument about mootness? Perhaps. Can she not do so at any time before the case is closed? Well, under law v. Siegel, she's entitled to amend it and exempt it any time. However, in this case, as it now is presented to the court, she has not done so. She has waived her argument to a homestead exemption and has proceeded to recover only the Wildcard exemption. What do you see as the distinction between waiver and mootness in this case? You've used both of those. Perhaps, Your Honor, it would be better served to say mootness as opposed to waiver, although I think effectively in her actions by making that amendment, she gave up her right to object and claim the homestead exemption or the exemption on the proceeds of the homestead. Have you distributed the monies? You haven't distributed the $13,000. No, sir. I have not. The reason being, had I done so and the court were to rule that I would have to try to recover from the creditors, which is a very difficult matter. Although, as the case stands now, I'm ready to pay claims. I'm ready to file my trustee's interim report and final report and close the case, which I think is the appropriate. But in suggesting that you're holding on to the money because we could rule and you'd rather not chase the money, you'd rather be able to just comply with our ruling, aren't you essentially conceding that there is some relief we could grant, at least partial relief to the extent of the $12,000 and change that you're holding? Doesn't that undercut your jurisdictional mootness argument? Your Honor, years ago I learned never to underestimate or out-think an appellate court. I just thought it would be more prudent, rather than asking creditors to return the money that I paid on the claims, is to hold it. A trustee's bond is not insurance. Sir? A trustee's bond is not insurance. Yes, sir. But there's nothing that precludes this debtor from, if we were to rule in her favor, there's nothing that precludes her from amending her exemptions and getting that money back, is there? Absolutely, but the fact is she has not. And in the reply brief, Ms. Richards argues that she may. What if she doesn't amend? She's asking the court to speculate that she would amend and reclaim her homestead exemption. But relief isn't the question on mootnesses. Is there relief available? Is there a live controversy? How is there not a live controversy? How is it that we are precluded from ruling in a way that would give the appellate relief? Currently, there is no issue before this court where she has claimed a homestead exemption in the proceeds. She's only claimed her wildcard exemption in the proceeds. That's my argument as to why this case is now moot and there's nothing this court needs to determine. This case is finished. It is ready for me to pay claims, file my reports, and close it out. She is not pursuing her homestead exemption to the proceeds. Except she is by having filed a notice of appeal and pursued that appeal, is she not? Yes, ma'am, but within the record itself, there's nothing in there that says she's entitled to the homestead exemption of the proceeds. Let's switch back to the merits of the case here. The Bankruptcy Code uses the word uses as a residence. That seems to me to be a situation where you have to have use of the residence at the time of the filing of the petition. Yes, sir. Why don't you speak to that? You've heard arguments that we should be applying Kentucky state law, which determines property interests under Butner. Why is the use of the word uses in the Bankruptcy Code superseding the underlying Kentucky state law that seems to favor allowing proceeds to be essentially traced? A debtor, when they file the petition, can choose to claim an exemption under the state exemptions or the federal. Ms. Richards, in this case, chose the federal exemptions, and so she's bound by the limits of those exemptions. The statute is clear and unambiguous in terms of the debtor's homestead exemption depends on the debtor having a homestead. Clearly, the record shows that five days prior to filing, she sold her house. She no longer had a homestead. If she doesn't have a homestead, how can she claim a homestead exemption in the proceeds from the sale? There are a number of cases that cite that the homestead exemption is dependent upon the debtor having a homestead that they use as a residence. Clearly, Ms. Richards no longer had a residence at the time that she filed. I would further note that there are no cases interpreting the federal exemption under D-1 that states that that applies to the proceeds from the sale. There are a number of cases and states that have allowed that, and in the Healy case that I cited, the court actually said in the state of Wisconsin, the statute allows for the exemption of the proceeds. However, under 522D-1, that does not allow for it, and there's nothing in the statute that lets us infer that the debtor would be entitled or the statute would entitle the debtor to claim the exemption in the proceeds. Was the debtor living in the house at the time of the petition? No, sir. She had sold it. She had actually attended the closing and signed the deed of conveyance, and it was recorded prior to the filing of her petition. Was she still living in the house? The address on the petition is the same as the address of the property. No, sir. It's my understanding that at the time of the closing, she was not residing in the home. Thank you, Your Honor. All right. Thank you for your arguments. Oh, I'm sorry. You have rebuttal time? Thank you, Your Honors. Very briefly, I wanted to point out one thing because I've struggled with the uses as a resident's argument. I would like to point out for the Court's consideration that in 1980, Kentucky amended its exemption statute 427060 and that language, an individual's debtor aggregate interest not to exceed $5,000 in value in real or personal property such debtor or dependent of such debtor uses as a permanent residence in the state, which is nearly identical to the language in the federal statute. Now, cases in Kentucky after that time continue to hold that proceeds from the sale of the resident's homestead are exempt. That is the almost identical language to the federal statute. The other point, which I thought was really interesting, I think it interested you, certainly to me, is this notion of, okay, so the state has said here is what we're saying. These are your property rights. But as I said, in Kentucky, if you take our exemptions, you're only going to get $5,000. I think that's an interesting point. But I would ask the Court to separate the notion of how much that is from what is the nature of the right and focus on when you're doing this, the Court has to look at what rights, how the courts and the legislature of the state of Kentucky define what those rights are. There are a couple of cases out of our own district that have, in terms of trying to figure out what's a resident's Doesn't your argument run up against Law v. Siegel as far as the fact that we're supposed to look at the language of the statute and not be grafting on equitable concepts? I'm not asking to graft on an equitable concept. What I'm saying is that we have to first, it's a choice of where we're going to look to guide our decision. This case is about, okay, is money from a homestead still exempt? But there are a whole host of other issues like, well, what is a residence? How do we find it? And you look through the cases in Kentucky, there are well over 100 reported cases that deal with different aspects of what is a residence in the state of Kentucky. Looking at the, you're trying to have residents be viewed more as homestead, which I think pre-Law v. Siegel may have been the majority view. But the odd thing is that the use of the homestead concept has generally been limited. You can have many residences, but the use of state homestead concepts was more of a limiting factor in that it grafted on the idea that it had to be your principal residence or your primary residence. So it's odd that you're using it to try and expand the concept of residence to include proceeds, essentially, using the homestead concept is how I'm understanding it. Well, I think if we're within the realm of what the states have looked at, they don't have any problem saying, okay, you've converted your homestead into cash, we're going to let you keep that exemption. Certainly many states say that, but isn't that a Congress problem, not a court problem we can resolve as a court? Well, I'm just trying to think, why would you want to, I mean, when you say, you say the words, I didn't really, when you use the words, determine the debtor's aggregate interest in real or personal property used as a residence, it doesn't say principal residence. And one of the cases that deals with that, because principal residence is addressed and defined in a bankruptcy code, but residence by itself isn't. And so we're trying to figure, okay, we know it didn't say principal residence, like this is the place you live. And so the issue is when you're looking at, when the Kentucky court is looking at uses as a residence, what do they decide? Now, I'll just concede that if you want to say, how did Judge Merrill get to where he got? Did he do a good job of trying to interpret that? He did. I mean, I would take an issue with, okay, what's a debtor's aggregate interest in that residence, real or personal? Maybe he was too narrow in there, but it was a very defensible argument. I would say, well, if you're going to argue that, I would say aggregate interest would include, you know, the, well, proceeds. That's my aggregate interest. You run up against the problem of the word uses as a residence, and I think that's. Well, if you want to put it strictly temporal, like uses as a residence as the date of file, as opposed to aggregate interest in property uses in terms of, in a broader sense, I've used this as my residence, and now I'm going to convert that cash so I can go buy another residence. Well, I'm still using it as my residence. So, you know, where do you want to draw the line on that one, it seems? Thank you. Well, thank you. I appreciate your questions. All right. I think we're concluded. Thank you for your arguments, and the matter is submitted.